May it please the Court, John Sullivan for the Defendant Appellant, a quote collectively referred to as ABS, as they've been referred to throughout this litigation. Your Honors, ordinarily I wouldn't begin with a case quote, but I think there's one sentence from the Karras decision that I think pretty much guides everything we do in this case. This Court held, when a contractor helps the government perform a job, that in the absence of a contract, the government itself would have had to perform, and that relationship involves detailed regulation, monitoring, or supervision, the private contractor is acting under a federal officer's direction. In this case, Your Honors, if the vessel at issue would not have been able to sail without the statutory certificates that ABS issued on behalf of and in the shoes of the Coast Guard, and if ABS hadn't conducted those inspections and issued those certificates, the Coast Guard itself, an employee of the Coast Guard itself, would have been required to do so, applying the same international conventions, statutes, regulations, and rules that ABS applied. And that's why, Your Honors, why this case has to be reversed. Now tell me, Counselor, Judge Hitchens has been on the bench way before I was, and I've been in 32 years, he's seen a whole bunch of claims come in Houston, etc., etc., which doesn't make him error-proof, but I think he knew it wasn't a divorce case, right? So, tell me how he missed it, or in your view, in the language of the case? Is it the language you just read?  And I'm not being facetious at all. I understand. But I'm saying, bear conscience as a judge, there's glories on both sides, this is not the most complicated issue that a trial judge can get, but nonetheless important. And I'm very seriously requesting that when it's coming up on appeal, it's not just one thing to just say it's wrong, but tell us how it was recorded here. Is it the language, you know, in the statute itself? Is it the language you read? Just what? Your Honors, I think the answer is that the district court applied the wrong rule, unfortunately. This is a removal under Section 1442, not 1441. Both under each statute has a much different interpretation. While 1441 is given strict review, under 1442 there's supposed to be a broad interpretation of the statute. In this case, the district court mistakenly concluded that every close call should be in favor of lack of jurisdiction, and that the entire thing should be construed against removal. That's quite contrary to what the Supreme Court has said quite often, and what this court has said quite often. That 1442 gets a broad interpretation. Is this a case of first impression? Hardly, Your Honor. This court has, quite often, has addressed issues where you have a contractor like ABS under 1442, who has an agreement with the government. In this case, in fact, ABS has more than an agreement with the government. We have a federal statute that recognizes the delegation of authority from the Coast Guard to ABS. Chapter 33 of Title 46 sets up this entire vessel inspection regime, and in Section 3316, ABS is specifically named with authorizing the Coast Guard to give a delegation of authority to ABS. In fact, that's been done through regulations, and it's been done through the memorandum of agreement between ABS and the Coast Guard. Now, that specific, very specific case, such as a classification society like ABS, to an extent, that is an issue of first impression in this court. The 11th Circuit had opportunity to address a similar situation involving an airplane inspector. That's a case we cited in our brief, where the inspector at the manufacturing stage was authorized by the Federal Aviation Act to conduct inspections on behalf of the FAA. The 11th Circuit held that was acting under federal officer jurisdiction. The basic purposes of 1442, Your Honors, again, are to protect both the federal government and their contractors from having state courts evaluate the merits of their federal defenses, in particular, an immunity defense, which we've asserted in this case. In fact, in the 9th Circuit, the Durham v. Lackey case we cited went so far as to say, if we give a narrow reading to federal officer jurisdiction, the federal government's going to have some difficulties in getting entities to act on its behalf. Now, the mistake that the district court made in applying the wrong standard and saying we should look at this narrowly instead of broadly, unfortunately, the plaintiffs make a similar mistake in their brief. Now, especially, it's ironic when the plaintiffs themselves have alleged in their complaint in paragraph 5.6, other surveys were completed by ABS on behalf of the Coast Guard. 5.7, ABS was delegated responsibility by the United States for verifying the vessel's compliance with international conventions that the U.S. was a party to. So what we have here for acting under, we have the defendant performing actions on behalf of the federal government, and the defendant is subject to either the subjection, guidance, or control of the federal government. And what do we have here? We have regulations that set forth what ABS must do. Well, the district court said even a highly regulated actor may not get it in terms of acting under. I mean, that was kind of the crux of the district court's analysis in its order, correct? Correct, Your Honor. And I think that that was looking at the case from the wrong perspective. The party that's being regulated that maybe that would apply to perhaps would be the owners of the vessel. We, on the other hand, are enforcing the regulation. The entire regime of vessel inspection receipt, which is not a commercial function, as plaintiffs argue in their brief, it is a government regulatory function. Coast Guard is charged with that obligation, and they delegated it to ABS. The plaintiffs themselves allege that. Remind me, I just don't remember, I think Karras came down like two days before the district court's order. Correct, Your Honor. Did your motion to reconsider put Karras before the district court? I just can't recall. Squarely, Your Honor. That was the basic crux of our motion for reconsideration was this court's, I believe Your Honor wrote the decision, issued it before, obviously, we were not watching the docket every day while the, we actually expected oral argument, we didn't get a hearing in the district court about whether there was federal law in the jurisdiction. Briefly, with regards to the memorandum agreement between the parties, plaintiff's counsel, plaintiff would suggest all it does is create a licensing agreement. In fact, that's not what it does remotely. The agreement sets out the conditions for cooperation between ABS and the Coast Guard. When ABS is performing statutory services, that's a critical term, what are statutory services? Those are the federal regulatory inspections. Yes, ABS wears two hats. One hat is a classification society. That function basically assesses a vessel's compliance with international standards. What's important, that's what was issued in the Jackson case that plaintiff makes so much hay about. I'll get to that in a few moments. But in this case, ABS is wearing its regulatory hat. And the statutory services critically stated both in the agreement and in federal regulation, 46 CFR 8.130A. When ABS is performing statutory services, surveys, inspections, and certifications for the Coast Guard, it's as if they had been performed by the Coast Guard itself. And that agreement also sets out the scope of regulation that ABS is subject to, to establish the subjection, guidance, or control element. In fact, we have all three. It lists all the standards ABS has to meet, all the conditions it has to satisfy, its reporting obligations. And then that agreement lists 27 separate international conventions, five sets of U.S. Code chapters, and at least 12 subchapters of CFR that ABS is charged with enforcing on behalf of the Coast Guard. District Court overlooked all of that. Plaintiff's brief doesn't cite any of it. Plaintiff offers us the Jackson case, a district court case that does not bind this court, and unfortunately applied the same broad brush about being subject to federal regulation that it's not enough. But even more particularly in that, though, the Jackson case involves solely ABS wearing its classification hat. It's a key point in the decision. Why, even if it was somehow governed, Your Honors? Distinguishable because in this case, ABS is wearing its statutory certification hat. The plaintiff's moving papers attach three surveys. Every single one of them is a statutory survey. Again, ABS acted pursuant to a delegation of authority to certify the vessel owner's compliance with the conventions, statutes, rules, and regulations. And again, if ABS hadn't done it, then a uniformed officer of the Coast Guard would have had to do it before that vessel could sail. Counsel, your time is ticking down a little bit. So I want to change subjects, I guess, a little bit. And that is with regard to the other prongs of federal officer removal. The district court only reached the acting underprongment and said, well, out of 24, this is dispositive. You're contesting that. You vaguely argued it. What about the relating to prong and the cover for federal defense? Do we remand that? Or do you want us to address it here? Your Honor, I'm aware that it's gone both ways. This court has made clear it does have discretion. Not obligated to, but it does have discretion to reach those last two prongs. The last year lawyer case said as much, where the issues had been fully briefed in the court below, and particularly in this case, where the plaintiff's pleadings themselves set out that all the necessary requirements for federal officer jurisdiction. Well, it's not clear to me that those have been fleshed out and briefed to the extent warranting us to look at it in the first instance. Well, really, I'm not just saying we're not. But I'm just saying, because so much attention, as Judge Wilson says, the trial judge just went to the first prong. A general default, I hear you that it goes both ways. But a general default, if you say the trial judge erred on his first bend, we wouldn't go any further. We'd send it back down and say, you erred. We can sit on this and then move to the other points. And hopefully, we never see it again. Hopefully, yes, Your Honor. But again, I'm going to go back to the last year lay case. In that one, Your Honor, this court has not. But the similar argument for my ears is make the most powerful argument you can make. And if we agree with you on one, why this case is fully briefed on the other points to the point that we should make the peremptory decision on these other matters when the district court didn't? Don't cite any other cases when somebody else did. Somebody did panel. Well, Your Honor, in this case, it was fully briefed in the court below. In fact, the plaintiff's motion addressed all three points. We responded the same. On reply, they didn't address all three. At the top of my head, I forget which of the one or two they did not get to. Fully briefed. But here it's not fully briefed. Not fully briefed. Well, we did. But they elected not to. But the last year lay case says if it's fully briefed in the district court, you may let that. But you just said what I was waiting on you to say. You did. They didn't. That's what I said. Make the most persuasive case for us that this case, not another case, that it was fully. Your candidate is saying you did, but the other side thought, well, they could win on the other point they did. But if we were to say that's wrong, I mean. With regard to the related and to the related to component, Your Honors, we direct you no further than the complaint. The sections I read before, paragraph 5.5, ABS had more involvement than simply classifying the vessel. So they're alleging in their complaint that their claims arise from when ABS is not just wearing its classification hat, also wearing its vessel regulatory hat. Under the Savoy case, this court also made clear when any part of the plaintiff's, any of the plaintiff's claims implicate federal officer removal, the entire case should get removed. Which is what we have here. They've specifically alleged that we are in charge with enforcing international conventions on behalf of the Coast Guard. And that's what their claims arise from, Your Honor. The federal defense is also fully addressed in the court below. It's often stated it's a low hurdle, low bar that we have to clear, also to show it's a plausible federal defense. Federal immunity is clear under very many arrangements where a federal contractor is doing the will of the federal government, is entitled to that same immunity. So, Your Honors, then just to wrap up, I respectfully submit that this case clearly establishes... So it was filed when? What year? Was this case filed? Yeah. This case, I believe, was filed in 2020. 24? In the state court, I believe in late 2023 or early 2024. So it was before Judge Hittner in what, 2024? 2024 is when Judge Hittner issued his decision. It was issued about right a year ago, this time of year. So if you end up going back down, it's really been in the federal court about a year plus, right? The notice of removal, if I remember correctly, Your Honors, dated the March or April of 2024. Okay. So, again, just to wrap up, Your Honors, we're asking for a reversal of the related under, I mean, the acting under argument, as well as exercise its discretion to address all three points. Thank you. All right, so you've reserved your vote. All right, Mr. Flores? Why are you pushing so hard, Mr. Flores? Because we're correct, Your Honor. The district court judgment here is right. It applied exactly the right law. The law to apply is Watson from the Supreme Court. The fundamental problem in the other side's position is that they don't realize that this statute cares deeply about the difference between the government doing something and the government having something done. Between doing it and having it done. The government tries to achieve a lot of objectives. It has a lot of tools in the toolbox. But he says if ABS hadn't done it, the Coast Guard would have had to do it itself, not have somebody else do it. That's wrong, Your Honor. The same argument was made in Watson. If you drill down on the citations he gives for that proposition, they're on page 5 of the reply. They don't bear out. The statute here has lots of provisions that say the secretary shall, the secretary shall, the secretary shall. Those are all about regulations. The secretary shall issue a regulation that sets a standard such and such. The secretary shall set a standard for this and that. Those are classic regulatory provisions. So was Karras wrong? No, Your Honor. Karras was different because it did come to the conclusion that the government there had to do the job. But the opinion doesn't say why. It doesn't point to the statute. But Karras didn't involve a statutory designation of united to do something unlike here where – I mean I can't recall seeing many of these federal officer removal cases. But I haven't seen one where the acting – the actor is designated by statute as the one to act. Karras is different because it's a government benefit program. You can see that from the gist of the entire scheme. If the government is buying things like the government contractor cases, those are different. They say we need this ammunition. You're going to build it this way. Every case is different. That can never be the – every case is different. I mean the principle of law in there, but the facts, so on and so forth, I mean that can't be the defining moment. I mean it's definitely going to be different on the facts, benefits. So why does that care? The precedents say that the test cares if it's a basic governmental task. And so Karras is a government benefit where the government actually has to dole out the benefit itself. Nobody thinks that this licensing regime is a benefit. Quite to the contrary. Everybody knows this regime, this licensing regime is a burden. They're regulating how it gets done. If you drill down on the statutes, this statute is about how the licensing gets done, how the inspections get done. But this statute does not say you are entitled to something from the government like the Medicare and Medicaid statutes. Well, how about safe ships? I mean that's a benefit. They're just achieving it by regulation and inspection regime. Indeed, the same in Watson. The Food, Drug, and Cosmetics Act says that the FDA is supposed to make safe food for everyone. That is the mandate. It's a statutory mandate. The secretary shall issue regulations to make sure food is safe. The secretary shall stop poisons from moving into cigarettes. It is a very highly regulated industry. Nonetheless, in Watson, the court says that's not the kind of basic governmental function that crosses the threshold here. You can see this in the facts of this case because look at the agreement. The agreement that we're talking about is an agreement between the vessel and ABS. It's not an agreement between the vessel and the government that ABS is somehow carrying out. It's a private agreement between these contractors. Everything in the agreement talks about how the job is to be done. The agreement says when these inspections happen, they're going to happen this way. But that's a critical distinction that isn't answered here. Okay, the agreement is signed off by a rear admiral and ABS, and you're saying that's not for the government. That's just between the vessel and ABS. I'm sorry. I should distinguish the agreements. So that agreement, the agreement between ABS and the government, explains how ABS does its job. It is a licensing regime. In the same way that somebody that wants to perform state inspections on your car has to agree they're going to do it a certain way and follow the standards to test the muffler and the lights and so forth, they're obliged to do that. But they're not actually the government doing the job there. Well, but I mean I'm reading out of Karras, which is citing Watson. Acting under examines the relationship between the removing party and the relevant federal officer. A relationship is sufficiently close if the federal officer, the Coast Guard, exercises, quote, subjection, guidance, or control over the removing party. And that party is assisting or helping carry out a federal officer's duties as opposed to merely complying with the law. That doesn't have anything to do with whether there are benefits being doled out or regulations enforced. Your Honor, the question is where in the law does it say that the government has to perform these inspections? Find the statute because it's not in these briefs. It's not there. The closest they get is 46 U.S.C. 3308. This is 3308. It's cited on the reply. And that does not say the secretary shall perform the examinations. It says the secretary shall examine or have examined. The statute says either do it yourself or set up a regime and have private parties do it. It's an alternative system here. I don't see how that gets you any help whatsoever because it suggests that if the government delegates this to an entity, there's even more control or subjection or compulsion by the government to direct the actor's actions. So those are separate questions. One is the degree of control. The other is the subject of control. So there's a high degree of control here. For sure there's a high degree of control. We don't think it gets high enough, but there's a lot of control here. But that just means it's a highly regulated industry. The question is what is the job being done? The job being done here is a private job. The law says go get the inspection done. It's highly regulated industry, health care, shipping. ABS doesn't really exist in the industry. It exists – I mean I know it does other things, but it exists to effectuate this regulatory inspection scheme that Congress has delegated to the Coast Guard. Its only job is to perform – sort of conform to the scheme. That's right. It's a captured industry. That's what I'm – That's an economic reality. I don't think it's an industry at all. I think that counsel officers point that ABS is not regulated. ABS is enforcing the regulations. That's maybe stronger than CARES. I think to the contrary, Your Honor. The critical point is that in CARES, you have a government benefit that's being doled out. And so the government's job is to deliver this benefit. But see, you're making it sound like the case doesn't involve a benefit. Everything else is outside of the square. I mean then that can't be the law because every case is going to be different arising out of some of the benefits of something else. I mean I know what it says, but you're saying unless there's a benefit, everything else is differentiated. And it just seems like you're arguing too much on that. It's not me, Your Honor. It's Watson. Watson says you have to separate the world of entities that interact with the government. There are licensing schemes everywhere. All kinds of industries exist and businesses exist solely to give people services that they need in order to comply with government laws. It happens all over the place. Lawyers, in addition to many, many technical industries. You hire someone to order your affairs so that they comply with the law. This happens everywhere. Those service providers, the ones that are providing your compliance services, they aren't themselves the government. It's true. What they provide— They don't have to be the government. They have to be acting under the government. Correct, Your Honor. But this is Watson. This is the critical distinction out of Watson is that sometimes it's the government itself doing it, and you're enlisting someone along. If it was that simple, counsel, we wouldn't be here. Well, Your Honor— I mean I hear you. You're arguing for me. But if it's that simple, see Watson, I mean we wouldn't be here. No, I mean it's not that simple, Your Honor, but it's complicated, and it's complicated in a way that lines up on the Watson side of things. If there's doubt, use the history and the purposes of the statute. This isn't fluff. Watson tells you the history and the purposes matter. So look back to the historical analogs. The historical analog is federal officials are enforcing prohibition. The FBI is going to go take down the mob, and to get in the warehouse, they grab the doorman and say, open the door so we can get through. That kind of enlistment in an actual federal operation. The federal government there is doing the job, and they've enlisted someone temporarily to do that. That's not what you have here. Here you have a quintessentially modern operation of a regulatory scheme. The government isn't itself doing the job. What the government wants is through heavy carrots and heavy sticks for private industry to do it. So they set up a scheme. They've made lots of incentives. They say to the vessel, vessel, you have to get this done. And they say to the providers, this is how it has to happen. But that transaction, the inspection transaction, is a private transaction. The vessel here has to go hire the inspector. It can be ABS. It doesn't have to be. Someone else could qualify and get the license and provide this service. This industry is a little weird because ABS essentially predominates the industry. They've sort of captured the big license that's out there. And so they are, in many cases, the only provider. But it doesn't have to be them. It's just in the same way that if I go get my car inspected by the mechanic over here or the mechanic over there. True, they're following federal law. True, they're issuing a state sticker that says your car passes inspection. They are helping someone effectuate a federal scheme. But no one contends that that is a federal officer, and no one contends they're acting under a federal officer. Are you aware of any other case where the entity that is purportedly acting under direction of the federal government is named in the statute? No, Your Honor. This is a unique statute. I think if you took the labels off of the statute and looked at it in substance, what it actually does, which is what you're supposed to do, this is obviously a licensing scheme that says somebody has to provide these services. It's a really complicated licensing scheme. And then it uses weird labels. It just uses odd labels that say delegation instead of license, right, those things. But the substance of it… No, they're not odd labels if that's what it does. I mean, United, I guess, was a licensee, wasn't it? It was an MAO that was selected and therefore interfaced with CMS. I mean, I get your benefit-nonbenefit dichotomy, but how is that not a licensing scheme? I think it's different because in Karras, United, sorry, the government had to provide that service. They had to do it. The government did it by statute. If you want the authorities for that, look in the Karras appellees' brief by Mr. Bash, pages 9 and 10. So the court doesn't, in the opinion in Karras, Karras doesn't say this is why this statute crosses the threshold. It's just not there. The court didn't have occasion to explain it. If you want those authorities to compare to page 5 of the reply, go to the Karras appellees' brief, and it shows you chapter and verse about how that particular business and that particular service was required to be provided by HHS. Not so here. There's only one citation we see here, and it doesn't get far enough on that side. Before we get short on time, if you could address how far our opinion should go. I mean, assume we don't agree that the actor was with the district court's conclusion that there was no acting under. Do we reach the other prongs here, or do we send it back? No, Your Honor. You remand for consideration in the first instance for two reasons. Number one, that's the normal course, and the normal course is normal for a reason. Number two, the questions to be addressed, those issues that haven't been reached, are complex factually. They have to do with these big, long contracts, big, long documents. And so this isn't the instance of a pure question of law that you could decide quickly on appeal in the same way that district courts would. So the related to isn't as apparent? I mean, we've relaxed that prong, I guess. It's now in connection with, right? And we haven't fleshed that out really, connected or associated with. Isn't that broader? Doesn't that make it an easier question that we could go ahead and answer? It may be, Your Honor, but our position here is to remand and let it go in the first instance. And if we haven't fleshed it out, how is the district court supposed to do any better than we would do, articulating what that prong requires? So we have great faith in the district court because it proved itself here to get exactly the right answer. We might also, but I imagine the district court might have great faith in us trying to give it some clarity about what it should or shouldn't do as opposed to punting it back. And there again, isn't it an easy inquiry that this was a colorable defense or that ABS asserts a series of colorable defenses? We just don't know, Your Honor, because we have a joint issue here. If the court cares, it would probably need to ask for supplemental briefings so we could have it briefed here. You're acknowledging that for the reasons given, you really haven't briefed that issue. I mean, you weren't required to. That's right. For us to deal with it at a minimum would require more briefing, right? Right. So we say resolve the one issue that's briefed by both sides that was decided below and then either resolve it in our favor, the case is over, or remand and let the district court proceed. Well, but to put a finer point on it, I'm not saying I disagree with any of that, but the appellant briefed all of it, and the appellee made the decision not to address the other problems. I mean, do you get a second bite of the apple for that decision? It's not a second bite. It's a first bite. I mean, it's not a surprise issue, in other words. It was fully briefed before the district court. I know the district court ruled as it did, but then it was fully briefed here in the initial brief. I mean, I think before this court reversed the district court, it chose some solicitude to let the district court take a cut, so it's not just our interest at stake. I think the system rightly says the normal procedure is let district courts go first, not just for litigants and those officials. You're the appellee. You won. That's right, Your Honor. You won, and so you come up defending what the district court did, which doesn't necessarily energize you to address everything in the appellant's brief because you're defending it. That's right. And they want a reversal on the first one. Of course, he'd love to get the whole loaf while he's up here, right? If I can, I want to say something about how to construe the statute and what to do if you're unsure. So my friend on the other side says that the statute deserves a liberal construction. It's true some cases say that, but the statute has been construed. That job is done. We know what the statute means. Watson does that. Everything we're doing now is an application of the agreed statutory meaning. And on that question of someone proving themselves into a no legal rule, they have all the burdens. The removing party has to show you all the laws that check the boxes. They have to show you all the facts that check the boxes. And so if you're unsure about what the contract says or doesn't say, if you're unsure about how the statutory regime works or doesn't work, we win and they lose because it's their burden, as the party invoking jurisdiction, to show their entitlement to removal. The last part of the reply brief tries to fault us and say, oh, we haven't proven ourselves out of federal court. But that's, of course, not how the burdens lie. They have the burden on all of these key issues. So if you find yourself struggling in the 600-page memorandum of understanding and the contract to figure out how it works and you can't quite nail it down, that means to affirm because they haven't shown affirmatively that they're entitled to this relief. Those ambiguities matter. This really is an exceptional doctrine. The history and purpose really do matter. Watson says, look at this case and think about whether entertaining this case in state court triggers the kind of concerns we used to care about. Number one is some significant risk of state court prejudice. There's been no showing of that on the other side. You're supposed to look at whether entertaining this case in state court is going to stop the Coast Guard from doing this job. That's not at risk here. All of these things matter to the analysis. And the record is just silent because this really isn't a case of federal state interest and the kind of things we're talking about in the original federal officer removal doctrine. This is nothing like the Prohibition-era raids, right, where people had real antipathy there. What you really have is a regulatory case. Everything about this case screams regulation, regulation, regulation. All of the issues are going to sound like FDA cases about that area of regulation, which is under Watson a world that is not appropriate for federal officer removal under this statute. Well, I just have to confess, other than your benefit or not dichotomy, I just really have trouble squaring this with Karras and the language in Karras with Sykes-Watson. I just do. I can maybe be moved off the point, but just saying benefit, non-benefit to me, it is an answer. But I have real difficulty limiting Karras and his holding to just situations where benefit is involved. Now, I hear you. You're an able lawyer, and you argue, and you point, and you may be right. Arthur Karras is sitting next to me, so I'll ask him later. But I'm just saying, if I read it, I hear the benefit dichotomy. I get you. But like many of the cases we do, they're all different. But we have to apply these principles across several kinds. Under the statute, that's one thing. But just to say, well, that was a benefit, and here is a benefit. That just, to me, isn't enough of an answer to say, unless this is identical to Karras, benefit, therefore, x. Just something about that. I may get there, but something about that just doesn't seem, particularly for a language that is, quote, acting under. That's the language. And to me, that's a mixed question of law and fact. Looking at the contract, what the parties are actually doing, et cetera. It's not just a matter of construing, quote, the terms of the statute. Do you understand what I'm saying? Yes, Your Honor. I'll point you to the two best cases we have for this point. This is Martin and probably Glenn. These are Fifth Circuit cases. Martin and Glenn both come down on our side of the line. Martin, in particular, is a case where the court says, what's at issue is not a basic governmental task. It's not the kind of thing the government would have to do if the private party weren't here. So look to Martin for the solution. We briefed it in full. It may be a tricky decision, but this court has to resolve it one way or another. And in the same way that this court said government contractor cases are different, that just has to be done sometimes. It may not be a perfectly boxed out distinction, but I think, as I've said before, the way to really resolve this, if you can't figure out why the differences matter, look to the history, the history of it. That is the way to really solve this. Have the sailors been settled with? No, Your Honor. No? Case is live. Still pending? Yes. We're here. Thank you, Your Honor. All right. Thank you, sir. Ms. Sullivan, you have a vote. Thank you, Your Honor. I was pleased to hear, I believe, my adversary conceived that ABS is subject to a high degree of regulation, but he said not high enough. Well, how high? What more could we show, I think, is the question that that argument begs. We have an agreement. We have a statute. We have a regulation. You mentioned the Martin case a moment ago, and the Martin case did a very good analysis distinguishing between cases where the defendant is subject to regulation versus where the defendant is actually doing a governmental task on behalf of a government agency. In Martin, the ultimate holding was that it was just being subject to regulation. Here, we're doing a basic governmental task, vessel safety inspections and certifications. I would think a case that Your Honors may look at is the Bell v. Thornburg case, which was a bankruptcy trustee appointed to assist the government, the court's trustee, in handling bankruptcies. This court held that in such a case, that trustee was acting under the treasury trustee and was subject to sufficient regulatory control to implicate the statute. The state court prejudice line my adversary mentioned a moment ago, there is no case that says we have to show that. In fact, the Savoy case from the circuit makes clear that it's pretty much presumed that a federal officer and a federal agent officer may be subject to a different treatment by a state court than the federal court. The federal court has that strong interest in adjudicating federal defenses, and particularly immunity defense. And the dichotomy Your Honor talked about briefly, near the end, as I think I mentioned in my argument in chief, there's been several decisions from this court addressing this statute and when it comes, and yet they can't point to a specific line in any case that talks about this dichotomy. But even if it did, we still satisfy. Because we have the agreement, we have the regulation, we have the statute, and those regulations that are incorporated into the agreement provide a sufficient level of subjection, guidance, and control over the inspections that ABS did. And again, their complaint implicates ABS's authority, and they allege omissions in connection with ABS's enforcing international conventions and federal statutes. Those are those statutory surveys that are deemed to be performed in certifications issued by the Coast Guard, as if the Coast Guard had done it itself. That's in both the regulation and in the agreement. Unless Your Honors have any further questions? Just as he sat down, counsel gave us two cases, Martin and another case, that he said are acidic or none, that it's not a governmental task that's involved, and those cases stand for the proposition of this isn't, quote, a governmental task that's involved. And counsel says those are the cases that sort of drive the distinction here. Yes, Your Honor. The Glenn case, I believe that was the COVID case involving the granaries, and Martin, neither case involved an agreement, for one thing, where we are charged with acting on behalf of the government. Both defendants tried to argue somehow that there was an implied agreement. In Glenn, I believe, they're trying to say that because they were encouraged to stay in operation, that that was sufficient. This court held no. And in Martin, again, there was no agreement. It was merely the defendant complying with regulatory obligations. All right. Thank you, counsel. Thank you, Your Honor. The case will be submitted along with the cases that are on our docket in a way for this day. With that, the panel stands and recess until 1 o'clock tomorrow.